42 P.3d 610

In re the Marriage of Denise M. WOODWORTH, Petitioner–Appellee,

v.

Richard S. WOODWORTH, Respondent–Appellant.

No. 1 CA–CV 01–0164.

Court of Appeals of Arizona, Division 1, Department E.

March 26, 2002.

Collins & Collins By Joseph E. Collins, Phoenix, Attorneys for Respondent–Appellant.

Patterson & Simiele By Scott L. Patterson, Tempe, Attorneys for Petitioner–Appellee.

## OPINION

BARKER, Judge.

¶ 1 Richard S. Woodworth ("appellant") appeals the trial court's decision denying imposition of sanctions and attorney's fees against Denise M. Woodworth ("appellee"). The primary issue is one of first impression: whether Arizona Revised Statutes ("A.R.S.") § 25–408(D) (Supp.2000) requires sanctions when one parent fails to give notice to the other of an out-of-state move affecting the other parent's custody or visitation rights.

¶ 2 Failure to provide notice pursuant to § 25–408(D) is a serious infraction. As we describe below, the statute requires accountability for such a violation, but does not make sanctions mandatory. Sanctions are left to the sound discretion of the trial court. Finding no abuse of discretion, we affirm.

### Pertinent Factual and Procedural History

¶ 3 The decree dissolving the parties' marriage was filed on November 21, 1996 in Maricopa County Superior Court. The parties received joint custody of their two daughters. Appellee was designated as the custodial parent; appellant was designated as the non-custodial parent. Appellant was granted reasonable visitation pursuant to the Maricopa County Superior Court guidelines.

¶ 4 The decree expressly provided that appellee may move outside of Arizona. It also provided that if appellee relocated, the long-distance visitation guidelines would apply.

¶ 5 In January 1997, two months after the decree was filed, appellee moved to Florida. Between 1997 and 1999, appellee traveled back and forth between Florida and Arizona before eventually relocating to Oregon in September 1999. While it is unclear how much time appellee spent in Arizona between 1997 and 1999, it appears to be significant as appellant had meaningful visitation during that period.

¶ 6 It is the move to Oregon in 1999 that raises the sanctions issue. Appellee did not provide written notice to appellant of that move. On September 10, 1999, within the same month that she moved to Oregon, appellee filed a petition for an order to show cause regarding modification of custody.

¶ 7 It is important to note that appellant does not contest the order allowing appellee and the children to move to Oregon; that was resolved by agreement. What was contested by the parties, and resolved by the trial judge after a hearing, was the issue of sanctions and attorney's fees based on appellee's move to Oregon in apparent violation of the notice provisions of § 25–408(D). While the trial judge also resolved other issues at the hearing, the issues of sanctions and attorney's fees are the only issues raised on appeal. We have jurisdiction pursuant to A.R.S. § 12–2101(A) (1994).

### Discussion

1. Sanctions under A.R.S. § 25–408(D).

¶ 8 Appellant first argues that sanctions under § 25–408(D) are mandatory when a violation of that statute is found. Second, even if sanctions are discretionary, appellant argues that the denial of sanctions was not supported by the evidence.

A. **Section 25–408(D) Requires Accountability But Does Not Make Sanctions Mandatory.**

i. *The Statutory Scheme.*

¶ 9 Section 25–408 provides for, among other things, the visitation rights of a non-custodial parent. With certain specified exceptions, the statute states that a non-custodial parent "is entitled to reasonable visitation rights to ensure that the minor child has frequent and continuing contact with the non-custodial parent...." A.R.S. § 25–408(A). The legislature intended this provision to contribute to the child's well-being by bestowing special protection upon the visitation rights of parents. *Bryan v. Bryan*, 132 Ariz. 353, 356–357, 645 P.2d 1267, 1270–1271 (App.1982).

¶ 10 As part of protecting visitation rights, § 25–408(C) dictates (under specified conditions) a sixty-day notice requirement in favor of a non-custodial parent before the custodial parent relocates out of state.[1] Section 25–408(D) requires that the notice be in writing and then sets forth the language as to sanctions at issue here:

*The notice* required by this section *shall be made by certified mail,* return receipt requested, or pursuant to the Arizona rules of civil procedure. *A parent who does not comply with the notification requirements of this subsection is subject to court sanction. The court may impose a sanction that will affect custody or visitation* only in accordance with the child's best interests.

A.R.S. § 25–408(D) (emphasis added). Appellant argues that if the sixty day notice requirement is not met as prescribed, sanctions are mandatory. We disagree.

### ii.  Construing the Statutory Passages at Issue.

¶ 11 Arizona courts have neither examined the imposition of sanctions under § 25–408(D) nor considered whether those sanctions are mandatory. This issue requires statutory interpretation, which we take up *de novo. Phoenix Newspapers, Inc. v. Molera,* 200 Ariz. 457, 460 ¶ 10, 27 P.3d 814, 817 (App.2001).

¶ 12 When interpreting the terms of a statute, the cardinal rule is to seek a sensible construction that will give effect to the legislative intent behind the statute. *State v. Wagstaff,* 161 Ariz. 66, 69–70, 775 P.2d 1130, 1133–1134 (App.1988) (citations omitted). Therefore, we look to the language of the statute and give effect to its terms according to their commonly accepted meanings. *Mer-*

*cy Healthcare Arizona, Inc. v. Arizona Health Care Cost Containment System,* 181 Ariz. 95, 98, 887 P.2d 625, 628 (App.1994).

¶ 13 The provision at issue includes two passages referencing the imposition of sanctions: (1) "A parent who does not comply with the notification requirements of this subsection is *subject to* court sanction," and (2) "The court *may impose* a sanction that will affect custody or visitation only in accordance with the child's best interests." A.R.S. § 25–408(D) (emphasis added). For the reasons that follow, we believe the first passage referenced determines that the sanctions are discretionary but must be considered as part of an accountability process. The second passage places limits on the exercise of that discretion.

### iii.  The Accountability Process.

¶ 14 In light of the first passage of § 25–408(D), our determination of whether sanctions are mandatory or discretionary turns on the meaning of the phrase "subject to." The ordinary use of the term "subject" in this setting is "to make liable" or "to make accountable." Webster's Third New International Dictionary 2275 (1993). "Subject to" is also defined as "[l]iable, ... answerable for." Black's Law Dictionary 1425 (6th ed.1990). Although but one of several uses of the term "subject to," this common usage is consistent with other legal authorities. *Homan v. Employers Reinsurance Corp.,* 345 Mo. 650, 136 S.W.2d 289, 298 (1939) ("The words 'subject to' must be construed in their natural, plain and ordinary signification. The words 'subject to' are defined by lexicographers as meaning 'liable,' and the word 'liable' is defined as 'bound or obligated in law or equity; responsible; answerable.' ") (citations omitted).[2]  Therefore, a parent who has become

---

1. Section 25–408(C) provides in full as follows:
   If by written agreement or court order both parents are entitled to custody or visitation and both parents reside in the state, at least sixty days' advance written notice shall be provided to the other parent before a parent may do either of the following:
   1. Relocate the child outside the state.
   2. Relocate the child more than one hundred miles within the state.
   A.R.S. § 25–408(C). The parties agree that this provision is applicable here.

2. Arizona authorities have also considered the phrase "subject to," but in different settings. *Anderson v. Southwest Sav. and Loan Ass'n,* 117 Ariz. 246, 248–49, 571 P.2d 1042, 1044–45 (App. 1977); *Del Rio Land, Inc. v. Haumont,* 110 Ariz. 7, 9, 514 P.2d 1003, 1005 (1973). In *Anderson,* we construed A.R.S. § 44–3139. *Anderson,* 117 Ariz. at 248–49, 571 P.2d at 1044–45. In pertinent part, § 44–3139 stated: "the rights of an assignee are *subject to* ... [a]ll the terms of the contract...." *Id.* (emphasis added). In *Anderson,* the phrase "subject to" was given its

"subject to court sanctions" pursuant to § 25–408(D) becomes *answerable* or *accountable* to the court.

¶ 15 While a trial court cannot shirk its legislatively mandated duty to hold a violator of § 25–408(D) *accountable*, we do not find that the accountability process makes sanctions mandatory. For instance, the trial court may determine that the process of holding a parent to account for the violation (and not ordering any type of sanctions) is sufficient to address the circumstances. This would be within the statutory range but still subject to an abuse of discretion analysis.

¶ 16 Additionally, the trial court may deny monetary sanctions but sanction a parent by ordering some non-monetary act such as community service [3] or other forms of non-monetary sanctions to appropriately address the violation.[4] *See State v. DeCamp*, 197 Ariz. 36, 40, ¶ 22, 3 P.3d 956, 960 (App.1999) (citing *State v. Starks*, 122 Ariz. 531, 534, 596 P.2d 366, 369 (1979) ("[T]he court has broad discretion to determine the nature of any sanction.")). As detailed below, the sanctions may also affect custody or visitation.

■ ¶ 17 The accountability process is a real process. It is required. Sanctions, however, are not. Had the legislature chosen to make sanctions mandatory, it could have simply stated that a violating party "shall be sanctioned" as opposed to being "subject to court sanction," as § 25–408(D) in fact provides. "The ordinary meaning of 'shall' in a statute is to impose a mandatory provision." *HCZ Const., Inc. v. First Franklin Financial Corp.*, 199 Ariz. 361, 364, 18 P.3d 155, 158 (App.2001) (citing *Ins. Co. of N. Am. v. Superior Court*, 166 Ariz. 82, 85, 800 P.2d 585, 588 (1990); *Navajo County Juv. Action No. JV–94000086*, 182 Ariz. 568, 570, 898 P.2d 517, 519 (1995); *Phoenix Newspa-*

*pers, Inc. v. Superior Court*, 180 Ariz. 159, 161, 882 P.2d 1285, 1287 (1993)). The legislature, certainly, was aware of its options in this regard. In fact, in the initial sentence of § 25–408(D) the legislature made the written notice requirement mandatory by providing the notice "shall be" by certified mail. The legislature did not choose to repeat that language with regard to its provision for sanctions.

¶ 18 Thus, the plain language of the first passage at issue does not make the sanction *mandatory*; it makes the party *accountable* to the court. We now turn to the second passage.

### iv. Sanctions that Affect Custody or Visitation.

¶ 19 The second passage of § 25–408(D) provides, "[t]he court may impose a sanction that will affect custody or visitation only in accordance with the child's best interests." A.R.S. § 25–408(D). The use of the term "may impose" sanctions in this passage may also be construed to show that the sanctions under § 25–408(D) are discretionary rather than mandatory. However, we believe the more cohesive reading of the term in this setting is to *permit* ("may impose") a sanction affecting custody or visitation so long as it is in accordance with the child's best interests. *See State v. Sweet*, 143 Ariz. 266, 270, 693 P.2d 921, 925 (1985) ("If reasonably practical, a statute should be explained in conjunction with other statutes to the end that they may be harmonious and consistent." (citing *State ex. rel. Larson v. Farley*, 106 Ariz. 119, 122, 471 P.2d 731, 734 (1970)).

¶ 20 The ability to affect custody or visitation as a sanction is a significant legislative grant. The legislature, in this second pas-

---

3. Sanctions in the form of community service have a two-fold benefit: (1) driving the point home to the violator and (2) positively affecting our communities.

4. Here, while no monetary sanctions were imposed, the trial court did order participation in parenting classes, which might be considered a sanction, albeit not monetary. However, neither party argued that the parenting classes were sanctions, and the trial judge expressly denied the motion for sanctions.

alternative meaning of "subordinate to" or "subservient to." 117 Ariz. at 248, 571 P.2d at 1044. In *Del Rio Land* the context was the same as *Anderson;* it construed the phrase "subject to the mortgage." 110 Ariz. at 9, 514 P.2d at 1005. Thus, neither case is particularly helpful here except for the proposition that "[t]he term 'subject to' has a variety of definitions depending upon the subject matter in which it is used." *Id.* (citation omitted).

sage, makes it clear that such a sanction can *only* be imposed "in accordance with the child's best interests." A.R.S. § 25–408(D). The availability of a sanction affecting custody or visitation does not limit the trial court's ability to impose financial or other appropriate sanctions. The role of the second passage is simply, and importantly, to provide discretion to the court to take the dramatic step of affecting custody and visitation by means of sanction, but only in keeping with the child's best interests. When the court does not determine such a sanction is appropriate, other sanctions may be considered but need not be imposed.

¶ 21 Thus, the legislative scheme provides that the parent who violates the notice requirements of § 25–408(D) is accountable to the court for the violation. As part of the process of holding the violator accountable, the court may then impose sanctions. Those sanctions may be financial or otherwise. They may affect custody or visitation when doing so is in accordance with the child's best interests. Sanctions, however, are not mandatory.

### v. The Rationale Behind the Rule.

¶ 22 There is good reason for the legislature to leave the issue of sanctions to the trial court instead of mandating them with a broad brush. Custody and visitation issues are sensitive matters for a family. *See Graville v. Dodge*, 195 Ariz. 119, 128, ¶ 42, 985 P.2d 604, 613 (App.1999)(visitation order involved "sensitive areas of parental control"); *Reid v. Reid*, 20 Ariz.App. 220, 221, 511 P.2d 664, 665 (1973) (dealing with "a sensitive matter such as a divorce action"). The health of the family is critical to the health and vibrancy of our communities and our state. *See Graville*, 195 Ariz. at 125, 985 P.2d at 610 ("The state has an interest in promoting healthy family relationships that enable children to become well-adjusted, responsible adults."); *Moran v. Moran*, 188 Ariz. 139, 144, 933 P.2d 1207, 1212 (App.1996) (referencing the importance of "the family and of society, without which there would be neither civilization nor progress") (quoting *Maynard v. Hill*, 125 U.S. 190, 211, 8 S.Ct. 723, 31 L.Ed. 654 (1888)). It makes eminent sense

for the trial judge, who has become well acquainted with the issues of the particular family, to have discretion to determine whether those needs would best be served by a sanction, and if so, what. *Cf. Armer v. Armer*, 105 Ariz. 284, 289, 463 P.2d 818, 823 (1970) ("[T]he trial judge is in the most favorable position to determine what is best for the children."). As the next section shows, it is abundantly apparent that the trial judge here did just that; she became well-informed as to the facts and circumstances surrounding this particular family and exercised her discretion to render a sound decision.

### B. *The Trial Court Did Not Abuse Its Discretion in Declining Sanctions.*

■ ¶ 23 Abuse of discretion is an exercise of discretion that is "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *Torres v. North Am. Van Lines, Inc.*, 135 Ariz. 35, 40, 658 P.2d 835, 840 (App.1982); *see also Englert v. Carondelet Health Network*, 199 Ariz. 21, 27, ¶ 14, 13 P.3d 763, 769 (App.2000) (reasoning it would "affirm the trial court's decision if it did not 'exceed[ ] the bounds of reason by performing the challenged act.' " (quoting *Toy v. Katz*, 192 Ariz. 73, 83, 961 P.2d 1021, 1031 (App.1997))).

■ ¶ 24 Following the hearing on this matter, the trial judge issued a written minute entry detailing her ruling. She addressed the issue of sanctions at length. She found that appellee was entitled to relocate, but had done so without giving the required notice. The trial judge also found that the relocation was done in a manner that was detrimental to the family. She stated in part:

> [T]he Mother was entitled to relocate. However, the manner in which she did so created greater animosity between the parties and deprived the Father and Children of the ability to prepare for the event. The Father was not given the opportunity to say goodbye to the Children.

The trial judge also noted:

> The Court also believes the assistance of a Family Court Advisor should alleviate some of the existing confusion and tension. The goal should be not only to effectuate long distance guideline visitation for the

Father and Children, but to improve the relationship between the Parents so as to allow them to better meet the Children's emotional needs.

In addition to the recommendation for a family court advisor,[5] the trial judge ordered that the parties participate in a "High Conflict Parental Education class" and provide verification of attendance within ninety days.

¶ 25 Thus, the trial judge took steps to distinctly address the violation she found. Her assessment of the family situation was reasoned, complete and thorough. She then provided orders to address the violation. Those orders were neither "manifestly unreasonable" nor based on "untenable grounds." *See Torres v. North Am. Van Lines, Inc.* 135 Ariz. at 40, 658 P.2d at 840. On the contrary, the orders were completely appropriate for the matter at hand. That the trial judge did not award monetary sanctions, and in fact denied the sanctions motion, was well within her discretion.

¶ 26 Accordingly, based on the facts of record and the orders issued, we find no abuse of discretion by the trial judge in denying the request for sanctions.

**2. Attorney's Fees Pursuant to A.R.S. § 25–408(K).**

¶ 27 Appellant argues that § 25–408(K) required the trial court to order attorney's fees. The subsection states that,

[t]he court *shall assess attorney fees* and court costs against either parent *if the court finds that the parent has unreasonably denied, restricted or interfered with court-ordered visitation.*

A.R.S. § 25–408(K) (emphasis added).

¶ 28 The trial court considered the factors for attorney's fees pursuant to A.R.S. § 25–324 (2000);[6] no findings were made pursuant to § 25–408(K). The trial court found each party responsible for its own fees and costs.

¶ 29 The record provided does not show that appellant raised the issue of man-

datory attorney's fees based on § 25–408(K) at the trial level. The trial judge accordingly had no opportunity to consider this issue or make findings in that regard. Therefore, appellant has waived the argument on appeal. *Dillig v. Fisher*, 142 Ariz. 47, 51, 688 P.2d 693, 697 (App.1984). We need not address it further.

### *Conclusion*

¶ 30 Sanctions are not mandatory for violations of A.R.S. § 25–408(D). A trial judge, however, is charged with the duty of holding any violator accountable and must appropriately exercise his or her discretion in determining whether sanctions should or should not be imposed. The trial judge did so here.

¶ 31 Accordingly, we affirm the proceedings below. In the exercise of our discretion, appellee's request for attorney's fees on appeal pursuant to A.R.S. § 12–349 and § 25–324 is denied.

CONCURRING: JON W. THOMPSON, Presiding Judge, and JEFFERSON L. LANKFORD, Judge.

---

5. The minute entry at issue does not order that the parties proceed via a family court advisor. It does order that the parties utilize "Conciliation Services [of the court] or a private mediator as agreed upon."

6. A.R.S. § 25–324 provides as follows:

The court from time to time, after considering the financial resources of both parties and the reasonableness of the positions each party has taken throughout the proceeding, may order a party to pay a reasonable amount to the other party....