NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Marriage of:

ROBERT N. STROVINK, *Petitioner/Appellant*,

*v.*

CHIFFON V. JONES, *Respondent/Appellee*.

No. 1 CA-CV 13-0604
FILED 11-20-14

Appeal from the Superior Court in Maricopa County
No. FC2011-005366
The Honorable Susan M. Brnovich, Judge

**AFFIRMED**

COUNSEL

Robert M. Strovink, El Mirage
*Petitioner/Appellant*

Chiffon V. Jones, Phoenix
*Respondent/Appellee*

## MEMORANDUM DECISION

Judge Andrew W. Gould delivered the decision of the Court, in which Presiding Judge Margaret H. Downie and Judge Samuel A. Thumma joined.

**GOULD**, Judge:

**¶1**        Robert N. Strovink ("Father") appeals the family court's decree awarding joint legal decision-making authority to him and his ex-spouse, Chiffon V. Jones ("Mother"). Father also appeals the family court's award of child support in favor of Mother, and its denial of his petition for in loco parentis custody of his stepchild. For the following reasons, we affirm.[1]

### FACTS AND PROCEDURAL BACKGROUND

**¶2**        Father and Mother were married in 2003. The marriage produced one child, S.S. Mother also has a child, A.J., from a previous relationship. Father filed a petition for dissolution in 2011, and both parties sought sole legal decision-making authority for S.S. Father also requested, over Mother's objection, for in loco parentis custody of A.J.

**¶3**        The family court conducted a one-day hearing at which both parties testified. The court then filed a decree awarding the parties joint legal decision-making authority for S.S., designating Mother as the primary residential parent, and ordering Father to pay child support to Mother. The family court also denied Father's request for in loco parentis custody of A.J.

**¶4**        Father, who had filed a pre-trial request for findings of fact and conclusions of law, moved to amend the court's findings and conclusions regarding legal decision-making authority and child support. Mother agreed with Father that the parenting time order should be amended because it conflicted with her work schedule. The family court subsequently amended the decree, in relevant part, by filing two orders

---

[1]        Mother did not file an Answering Brief. Because child custody is at issue, we will not treat this omission as a confession of error. *See Hoffman v. Hoffman*, 4 Ariz. App. 83, 85, 417 P.2d 717, 719 (1966); *see generally* Ariz. R. Civ. App. P. 15(c).

stating that (1) neither party was designated as the primary residential parent and (2) awarding both parties equal parenting time. The family court then revised the amount of child support to reflect the fact that Mother and Father shared equal parenting time, and reduced Father's monthly child support obligation from $293 to $76 per month.

**¶5** Father timely appeals from the decree.

## DISCUSSION

### I. Default/Sanctions

**¶6** Father initially contends that the family court should have entered a default or sanctioned Mother by denying her a "defense" based on her failure to respond/untimely responses to his pleadings and motion to compel. Whether to impose sanctions is an issue generally left to a family court's sound discretion. *Woodworth v. Woodworth*, 202 Ariz. 179, 180, ¶ 2, 42 P.3d 610, 611 (App. 2002). The child's interest is paramount, however, and we cannot agree that Mother should forfeit the right to present evidence based upon these actions. "When custody of children is involved in a court proceeding, it seems to us to be the duty of the trial court to hear all competent evidence which may be offered." *Hays v. Gama*, 205 Ariz. 99, 103, ¶ 21, 67 P.3d 695, 699 (2003) (citation omitted) (vacating evidentiary sanction in child custody case). Nor can we agree with Father's unsupported statement that the failure to award sanctions against Mother was a "tribute to [the trial judge's] own bias and prejudices."

### II. Joint Legal Decision-Making for S.S.

**¶7** Father contends that the family court erroneously awarded the parties joint legal-decision making for S.S. Father argues that he should have been awarded sole legal decision-making authority and designated as the primary residential parent. We review the family court's determination as to legal decision-making for an abuse of discretion. *Owen v. Blackhawk*, 206 Ariz. 418, 420, ¶ 7, 79 P.3d 667, 669 (App. 2003). Because Father requested findings of fact and conclusions of law prior to trial, the family court must expressly state the basis for its conclusions. *Kelsey v. Kelsey*, 186 Ariz. 49, 50-51, 918 P.2d 1067, 1068-69 (App. 1996). We will uphold the family court's factual findings absent clear error. *In re Marriage of Berger*, 140 Ariz. 156, 161, 680 P.2d 1217, 1222 (App. 1983).

**¶8** As a preliminary matter, we note that Father has failed to provide a transcript of the dissolution trial. As the appellant, Father is required to provide a complete record to this court, including a trial

transcript. *See* Ariz. R. Civ. App. P. 11(b)(1). In the absence of a transcript, we presume the record supports the family court's findings and conclusions. *See Baker v. Baker*, 183 Ariz. 70, 73, 900 P.2d 764, 767 (App. 1995) (affirming decision in the absence of a transcript).

**¶9** In challenging the family court's joint legal decision-making determination, Father argues that the findings made by the family court pursuant to A.R.S. § 25-403(A) were insufficient, and that the evidence presented at trial did not support its findings. In making a determination concerning legal decision-making, the family court must consider the best interests of the child and all of the factors listed in A.R.S. § 25-403(A). Additionally, the family court must make express findings as to each factor and explain its reasoning in support of each finding. A.R.S. § 25-403(B).

**¶10** Here, the decree reflects that the family court made findings as to each factor under A.R.S. § 25-403(A), and cited specific evidence to support all of its findings. We find no error.

**¶11** Nonetheless, Father asks this court to reweigh the evidence presented at trial, contending that it supports an award of sole legal decision-making to him. However, this court's "duty on review does not include re-weighing conflicting evidence." *Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 16, 219 P.3d 258, 262 (App. 2009). The family court was in the best position to weigh this evidence, and we will not re-weigh it on appeal. *Gutierrez v. Gutierrez*, 193 Ariz. 343, 347-48, ¶ 13, 972 P.2d 676, 680-81 (App. 1998); *see also Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4, 53 P.3d 203, 205 (App. 2002) (explaining that the trier of fact is in the best position to weigh evidence). Additionally, because there is no trial transcript, we presume the record supports the family court's findings. *See Baker*, 183 Ariz. at 73, 900 P.2d at 767.

**¶12** Accordingly, we conclude the family court did not err in awarding joint legal decision-making to the parties.

## III. In Loco Parentis Custody of A.J.

**¶13** Father also contends the family court erred by denying his request for in loco parentis custody of A.J. We review a family court's decision regarding in loco parentis custody for an abuse of discretion. *Egan v. Fridlund-Horne*, 221 Ariz. 229, 240-41, ¶ 43, 211 P.3d 1213, 1224-25 (App. 2009).

**¶14** In order to show he stood in loco parentis to A.J., Father was required to prove A.J. treated him as a parent and that he had "formed a

meaningful relationship" with A.J. "for a substantial period of time." A.R.S. § 25-401(1), -415(A)(1) (2012).[2] In addition to establishing an in loco parentis relationship, Father was required to prove "[i]t would be significantly detrimental" for A.J. "to remain . . . in the custody" of Mother, who in fact wished to retain custody. A.R.S. § 25-415(A)(2) (2007). A rebuttable presumption exists that it is in A.J.'s best interest to award custody to Mother, her legal parent. *See* A.R.S. § 25-415(B); *see also* A.R.S. § 25-415(G)(2) (defining a "legal parent" as "a biological or adoptive parent whose parental rights have not been terminated"). To rebut this presumption, Father was required to produce clear and convincing evidence that awarding custody to Mother was not in A.J.'s best interests. *See* A.R.S. § 25-415(B).

**¶15** The family court determined that Father failed to show he stood in loco parentis to A.J. The family court found that despite the fact Father was A.J's stepfather for seven years, Father treated A.J. "differently than his natural daughter," and there was "no evidence" that a father-daughter bond ever developed. We presume that the transcript supports this finding. *See Baker*, 183 Ariz. at 73, 900 P.2d at 767.

**¶16** The limited record available to us also supports the family court's finding. Mother took A.J. to Michigan before this case commenced. The family court also found that Father admitted to hitting A.J., and that Mother sent A.J. to Michigan "to protect her from [Father]." During her absence, Father acknowledged that A.J. did not want to return home. According to Mother, A.J. has had no contact with Father since March 2011 and has told Mother on several occasions that "she wants nothing to do with [Father] and wishes he would leave her alone."

**¶17** On this record, we affirm the family court's finding that Father failed to show, by clear and convincing evidence, that he stood in an in loco parentis relationship with A.J.

---

[2] The trial in this case occurred in 2012. The Arizona Legislature revised the statutes for third-party rights effective January 1, 2013. The applicable statute is now A.R.S. § 25-409 (Supp. 2014).

## IV. Child Support[3]

### A.        Earning Capacity

**¶18**        Father argues that the child support order erroneously attributes monthly income to him of $2800 per month, or $33,600 annually, when his last tax return reported earnings of $19,188. We review the family court's child support determination for abuse of discretion. *Little v. Little*, 193 Ariz. 518, 520, ¶ 5, 975 P.2d 108, 110 (1999). Our review of the court's interpretation of the Arizona Child Support Guidelines, A.R.S. § 25-320 app. § 5(E) (Supp. 2014) ("Guidelines"), is de novo. *Clay v. Clay*, 208 Ariz. 200, 202, ¶ 5, 92 P.3d 426, 428 (App. 2004).

**¶19**        Courts may look to earning capacity and prior work experience in evaluating a parent's income for purposes of child support. Guidelines § 5(E) (if a parent is unemployed or working below full earning capacity, the family court may consider the reasons and "may attribute income to a parent up to his or her earning capacity"); *Taliaferro v. Taliaferro*, 188 Ariz. 333, 337, 935 P.2d 911, 915 (App. 1996). Father sustained a shoulder injury in 1997 but continued to work as a carrier for the U.S. Postal Service until 2005. He is now unemployed. Mother contended that the family court should attribute at least part-time income of $1200 per month to Father in view of his paralegal associate degree. The family court adopted Mother's income figure and added it to Father's monthly $1600 payments from Social Security. The court found "no evidence" of a disability preventing Father from working as a paralegal.

**¶20**        The family court acted within its discretion in implicitly rejecting Father's claim that job prospects offering much lower earnings, such as a light cashier, represented his actual earning capacity. Because we lack a trial transcript, we assume that the trial record supports the family court's income attribution. *See Baker*, 183 Ariz. at 73, 900 P.2d at 767.

**¶21**        Moreover, the limited record before us fails to support Father's argument. According to Father, a ruling by an administrative law judge ("ALJ") supports his inability to secure employment as a paralegal.

---

[3]        Father also claimed that the family court should have attributed a different annual income to Mother. Because he failed to cite legal authorities and the record, and did not otherwise develop this argument, we decline to address it. *See Polanco v. Indus. Comm'n*, 214 Ariz. 489, 491 n.2, ¶ 6, 154 P.3d 391, 393 n.2 (App. 2007) (declining to consider an undeveloped argument mentioned in passing); *see generally* Ariz. R. Civ. App. P. 13(a)(6).

That November 30, 2012 ruling, however, post-dates the decree and was only submitted to the family court with a motion for reconsideration. Although acknowledging Father's shoulder injury, the ALJ found that Father was "not under a disability" and "there were jobs that existed in significant numbers in the national economy that the claimant could have performed." Examples of occupations "in significant numbers" available to Father include mail clerk, cashier, and ticket taker. The ALJ did not state that Father was incapable of working as a paralegal; rather, the ALJ noted that Father had told a physician he had unsuccessfully sought work in that field.

¶22 Accordingly, on this record, we hold that the family court appropriately attributed part-time income to Father. *See Taliaferro*, 188 Ariz. at 336-37, 935 P.2d at 914-15 (affirming attribution of income to father who was capable of gainful employment notwithstanding his receipt of disability benefits).

## B. Support Calculation

¶23 Father argues the family court's child support calculation is erroneous because it credits Mother with a half-day of parenting time when she actually spends six hours with the child that day. As the family court noted, Father never states what the adjustment should be, and the court had already revised its support calculation to reflect equal parenting time. Even assuming that the family court erred in crediting Mother for six extra hours per week, any impact on the $76 monthly support award was de minimis and does not constitute an abuse of discretion.

## C. Insurance Cost

¶24 Father further complains that he is required to pay "all" of Mother's health insurance costs and contends that the funds are not child support. We disagree.

¶25 Mother's affidavit of financial information states that her medical plan charges $87.23 for insuring S.S., and the dental plan charges $16.62. The combined charge is $103.85. The family court explained that it attributed $100 to this expense, not the $300 as Father had claimed. The cost of this insurance qualifies as child support. *See* A.R.S. § 25-500(9) (Supp. 2014) (defining "support" as "the provision of maintenance or subsistence and includes medical insurance coverage, or cash medical support, and uncovered medical costs for the child, arrearages, interest on arrearages, past support, interest on past support and reimbursement for expended public assistance").

## CONCLUSION

¶26        We affirm the family court's decree.



Ruth A. Willingham · Clerk of the Court
FILED: jt